WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ernestina Baca,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-20-00608-PHX-DWL<br><br>**ORDER** |

At issue is the denial of Plaintiff Ernestina Baca's application for disability insurance benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 12, "Pl. Br."), Defendant SSA Commissioner's Answering Brief (Doc. 14, "Def. Br."), and Plaintiff's Reply (Doc. 15, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 11, "R.") and now affirms the Administrative Law Judge's ("ALJ") decision (R. at 17–26).

**I.     BACKGROUND**

On May 20, 2016, Plaintiff filed an application for disability insurance benefits. (*Id.* at 17.) Plaintiff alleged a disability onset date of March 29, 2016, which is one day after a previous nondisability determination by a different ALJ, who found that Plaintiff was not disabled through March 28, 2016. (*Id*. at 17, 48-58.)

Plaintiff's present claim was denied initially on December 2, 2016, and on

reconsideration on March 3, 2017. (*Id*. at 17.) Plaintiff appeared before the ALJ for a hearing on her present claim on January 31, 2019. (*Id*. at 31-44.) On March 22, 2019, the ALJ denied Plaintiff's claim. (*Id*. at 17-26.) On January 29, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (*Id*. at 1-3.)

The Court has reviewed the medical evidence and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: chronic venous insufficiency; osteoarthritis in the feet; headaches; obesity; cervical degenerative disc disease; and shoulder impairment. (*Id*. at 20.) The ALJ found that Plaintiff's fibromyalgia was a non-severe medically determinable impairment because it "do[es] not significantly limit [Plaintiff]'s physical or mental ability to do basic work activities. (*Id*. at 20–22.)

Ultimately, concluded that Plaintiff was not disabled from March 29, 2016 through December 31, 2018. (*Id*. at 26.) In doing so, the ALJ initially found that Plaintiff had not overcome the presumption of continuing nondisability that arose from the previous ALJ's nondisability determination. (*Id*. at 17-18.) Still, the ALJ performed the full customary analysis of Plaintiff's disability claim for the unadjudicated period. (*Id*. at 17–26.) The ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id*. at 22.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"), finding: "[Plaintiff] had the [RFC] to perform sedentary work . . . except [Plaintiff] can lift less than ten pounds, frequently and occasionally. [Plaintiff] can occasionally climb, balance, stoop, kneel, crouch and crawl. [Plaintiff] should avoid working around hazards, such as heights or moving machinery." (*Id*. at 23.) Based on this RFC, the ALJ adopted the previous ALJ's finding that Plaintiff can perform "past relevant work as a Benefits Clerk II." (*Id*. at 26.)

…

…

## II. LEGAL STANDARDS

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ typically follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R.

§ 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

"The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). Thus, "to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability," a claimant "must prove 'changed circumstances' indicating a greater disability." *Id.* Changed circumstances may include "[a]n increase in the severity of the claimant's impairment" or "the existence of an impairment not considered in the previous application." *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). Even if a claimant rebuts the presumption, some of the previous ALJ's findings may be entitled to preclusive effect. *Chavez*, 844 F.2d at 694. The previous ALJ's findings regarding a claimant's RFC, education, and work experience should not be disturbed unless the claimant presents new and material evidence that implicates those findings. *Id.*

## III. ANALYSIS

Plaintiff raises six arguments for the Court's consideration. First, Plaintiff argues the ALJ erred by finding that she did not rebut the presumption of continuing nondisability that arose from the previous ALJ's decision. (Pl. Br. at 8–11.) Second, Plaintiff argues the ALJ erred by rejecting the opinion of her treating physician, Dr. Matthew Duke. (*Id.* at 11–17.) Third, Plaintiff argues the ALJ erroneously discounted her symptom testimony. (*Id.* at 17–20.) Fourth, Plaintiff argues the ALJ erred by failing to include a limitation relating to leg-elevation in her RFC. (*Id.* at 20–21.) Fifth, Plaintiff argues the ALJ erred by finding that her fibromyalgia was not a severe impairment. (*Id.* at 21–22.) Sixth, Plaintiff argues the ALJ erred by concluding that she could return to work as a "Benefits Clerk II" because the record does not establish that her past work corresponds to that job title. (*Id.* at 22–24.)

For the reasons that follow, the ALJ's decision is affirmed. Plaintiff has not demonstrated that most of the challenged portions of the ALJ's decision were erroneous and Plaintiff's remaining arguments demonstrate, at most, only harmless error. For

example, even if the ALJ erroneously concluded that Plaintiff had not rebutted the presumption of continuing nondisability, that error was inconsequential because the ALJ fully evaluated Plaintiff's claim (and, thus, did not actually apply the presumption). Similarly, even if the ALJ erred by deeming Plaintiff's fibromyalgia a nonsevere impairment, that error was harmless because the ALJ incorporated all of the fibromyalgia-related limitations supported by the evidence into Plaintiff's RFC.

### A.   The ALJ committed, at most, harmless error in determining that Plaintiff had not overcome the presumption of continuing nondisability

The ALJ found that Plaintiff "was not able to prove 'changed circumstances indicating a greater disability.'" (*Id*. at 17.)  Nevertheless, the ALJ proceeded to conduct a full merits evaluation of Plaintiff's disability claim. (*Id*. at 17–26.)  Plaintiff argues the ALJ's application of the presumption was improper because she did not have access to the entire record.  (Pl. Br. at 9–10.)  Plaintiff also argues the ALJ's finding of no changed circumstances is unsupported by the record because she underwent trigger point injections and radiofrequency ablation of the lower extremity veins after the previous nondisability determination.  (*Id*. at 10–11.)

The ALJ's finding that the presumption applies was, at most, harmless error. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (finding that harmless error principles apply when an error is inconsequential to the ultimate nondisability determination).  Although the ALJ stated that the *Chavez* presumption applied and that Plaintiff had not proved changed circumstances indicating greater disability, the ALJ did not functionally apply the presumption. (R. at 17.)  Instead, the ALJ proceeded to evaluate Plaintiff's claim on the merits, giving "careful consideration to the entire record," providing a detailed discussion of the medical evidence, individually analyzing each proffered medical opinion, and addressing Plaintiff's activities of daily living and symptom testimony. (*Id*. at 20–26.)  Put simply, the ALJ's formal finding that Plaintiff did not rebut the presumption was inconsequential because it did not end or control his evaluation of Plaintiff's claim.  *Cf. Cha Yang v. Comm'r of SSA*, 488 F. App'x 203, 204 (9th Cir. 2012)

(ALJ's misapplication of *Chavez* presumption was harmless); *Conrad v. Berryhill*, 2018 WL 437460, *4 (D. Or. 2018) (holding that the "ALJ's misstatements [concerning the *Chavez* presumption] were harmless"); *Gutierrez v. Colvin*, 2016 WL 5402941, *5 (C.D. Cal. 2016) ("Because the ALJ's implementation of the *res judicata* rule pursuant to *Chavez* was harmless, remand for this error is not appropriate."); *McGlothen v. Colvin*, 2015 WL 5706186, *3 (C.D. Cal. 2015) (ALJ's "invocation of res judicata" was harmless error because the "ALJ proceeded with a review of the medical evidence—a review that approximated the traditional five-step approach").

It should be acknowledged that the ALJ also relied on *Chavez* to adopt certain findings from the previous ALJ. (R. at 17.) In doing so, the ALJ found that "there was not new and material evidence relating to [Plaintiff]'s severe impairments and [RFC]." (*Id*. at 17–18.) Based on this conclusion, the ALJ adopted the previous ALJ's RFC calculation. (*Id*.) Similarly, the ALJ adopted the previous ALJ's findings regarding Plaintiff's past relevant work. (*Id*.) But whether the ALJ erred in adopting these findings turns on Plaintiff's remaining arguments—that is, whether the ALJ correctly evaluated the medical opinions and symptom testimony contained in the record. The Court turns next to those arguments.

### B. The ALJ committed, at most, harmless error in determining that Plaintiff's fibromyalgia was a nonsevere impairment

The ALJ found that although Plaintiff's fibromyalgia was a medically determinable impairment, it was nonsevere. (R. at 20–22.) Plaintiff argues this finding was erroneous because the record "establishes that effects of fibromyalgia would cause more than a minimal effect on [Plaintiff's] ability to work." (Pl. Br. at 21-22.)

To establish a medically determinable impairment, a claimant must provide evidence from a medically acceptable source, such as laboratory results or a licensed physician. 20 C.F.R. § 404.1513(a); *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). An impairment is nonsevere if it is a slight abnormality that has no more than a minimal effect on the ability to work. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

An ALJ must consider all of a claimant's medically determinable impairments when calculating the claimant's RFC, regardless of whether they are severe. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1523.

Even if the ALJ erred by deeming Plaintiff's fibromyalgia a nonsevere impairment, any such error was harmless. Because the ALJ found that Plaintiff had other severe impairments, the ALJ's evaluation of Plaintiff's claim did not end at step two of the five-step analysis. (R. at 20.) Further, because the ALJ found that Plaintiff's fibromyalgia was a medically determinable impairment, he was required to include, in Plaintiff's RFC, any limitations stemming from that impairment. Accordingly, any error committed by the ALJ in mischaracterizing Plaintiff's fibromyalgia as nonsevere was inconsequential. *See generally Sharp v. Comm'r of SSA*, 2019 WL 1043393, *3 (D. Ariz. 2019) ("Ninth Circuit law is not a model of clarity concerning how to evaluate claims of step-two error. Some cases suggest that, although it is error for an ALJ to fail to characterize a particular impairment as 'severe' during step two, the error can be disregarded as harmless if the ALJ properly addresses the impairment during later steps. Other decisions suggest that a claimant can't complain about an ALJ's failure to identify a particular impairment as 'severe' during step two so long as the ALJ determined the claimant also had other impairments that so qualify. Given these difficult-to-reconcile precedents, the Court declines to definitively resolve whether the ALJ 'erred' during step two by failing to characterize Sharp's atrial fibrillation/arrhythmia as a severe impairment. The dispositive issue in this case is whether the ALJ properly evaluated the evidence and testimony concerning that condition during later steps and factored that condition into the RFC.") (citations omitted).

**C.     The ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting the opinion of Plaintiff's treating physician, Dr. Duke**

Plaintiff argues the ALJ erred by rejecting the opinion of her treating physician, Dr. Duke, and instead giving great weight to the opinion of reviewing physicians. (Pl. Br. at 11–17.) Dr. Duke opined that Plaintiff had several acute functional limitations stemming

from her fibromyalgia and osteoarthritis. (R. at 464–66.) The ALJ rejected Dr. Duke's opinion for two reasons. First, he found that Dr. Duke's opinion was inconsistent with the objective medical evidence. (R. at 25.) Second, he found that Dr. Duke's opinion was inconsistent with Plaintiff's improvement with conservative treatment. (*Id.*)

When evaluating medical opinion evidence, "[t]he ALJ must consider all medical opinion evidence," and there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester*, 81 F.3d at 830. If a treating physician's opinion is not given controlling weight, then the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(c)(1)–(6) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632. If a treating physician's opinion is contradicted by another doctor's opinion, the ALJ cannot reject the treating physician's opinion unless he provides specific and legitimate reasons that are based on substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Here, the ALJ did not err by rejecting Dr. Duke's opinion based on Plaintiff's improvement with conservative treatment. When a physician's opinion is inconsistent with a claimant's improvement, an ALJ may discount the opinion on that basis. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Substantial evidence supports the ALJ's conclusion that Dr. Duke's opinion was inconsistent with Plaintiff's improvement. Throughout her treatment history, Plaintiff repeatedly reported that she responded well to injections and medication. (R. at 376 ["She states previous trigger point injections provided significant relief lasting six weeks. She would like those repeated today in office. . . . Patient reports meaningful analgesic relief with medications with improved functionality."], 384 [same], 393 [same], 402 [same], 701 [same], 708 ["The patient feels the medication(s) are efficacious in controlling their pain and have improved their quality of life by greater than 30%."], 710, 877.) Plaintiff was also counseled that lifestyle

changes, including increased activity, could help improve her symptoms. (*Id*. at 390 ["I encouraged the patient to increase his/her activity level as tolerated, as chronic pain seems to be improved with increasing activity levels."], 407 [same], 416 [same], 708 [same], 718 [same], 727 [same], 876 [same].)

It is significant that Plaintiff focuses all of her attention on rebutting the ALJ's first proffered rationale for discounting Dr. Duke's opinion—inconsistency with the objective medical evidence. (Pl. Br. at 11–14.) Plaintiff does not, in contrast, address the ALJ's second proffered rationale for discounting Dr. Duke's opinion—Plaintiff's improvement with conservative treatment. Thus, the ALJ's reasoning on that point is unchallenged.

The Court acknowledges there is some evidence in the record suggesting that Plaintiff's course of treatment (*i.e.,* injections and medication) was not conservative. (R. at 373.) Additionally, and as the Commissioner notes (Def. Br. at 4 n.1), the Ninth Circuit has suggested that certain types of injections may not qualify as conservative treatments. *Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014). Nevertheless, the ALJ in this case specifically found that Plaintiff's particular course of treatment qualified as conservative and specifically cited its effectiveness as a basis for discounting Dr. Duke's opinion. (R. at 25.) Plaintiff, in turn, ignores these portions of the ALJ's analysis in her opening brief (and, thus, does not dispute that the treatment was conservative and effective). This Court is not at liberty to reverse the ALJ on grounds not raised by the challenger. *Lewis,* 236 F.3d at 517 n.13; *Warre v. Comm'r of SSA*, 439 F.3d 1001, 1007 (9th Cir. 2006) ("Plaintiff also argues that the Commissioner erred in finding that [the] condition is not functionally equivalent to a listed impairment. Although Plaintiff made that argument to the Commissioner, she did not raise it before the district court. Accordingly, this issue is waived, and we do not consider it."); *Bergfeld v. Barnhart*, 361 F. Supp. 2d 1102, 1110 (D. Ariz. 2005) ("A reviewing federal court will only address the issues raised by the claimant in his appeal from the ALJ's decision.").

Finally, Plaintiff also argues that the ALJ's preference for the opinions of the reviewing physicians was error because treating physicians' opinions are entitled to

deference. (*Id*. at 15–17.) This argument misses the mark because treating physician opinions are not entitled to complete and unmitigated deference. ALJs may discount their opinions under certain circumstances. Those circumstances arose in this case—Dr. Duke's opinion was contradicted and the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting it. *Bayliss*, 427 F.3d at 1216.

### D. The ALJ did not err by discounting Plaintiff's symptom testimony and not adopting an elevated-legs restriction

Plaintiff accuses the ALJ of applying an incorrect standard when evaluating her symptom testimony. Plaintiff argues the ALJ erroneously required that her symptoms be "entirely consistent with the medical evidence." (Pl. Br. at 18.) Plaintiff also argues the ALJ did not provide "reasons" for rejecting her testimony and instead provided "conclusions" that were unconnected to her testimony. (*Id*. at 19.) Finally, Plaintiff argues the ALJ failed to include a limitation in her RFC that she must elevate her legs throughout the day. (*Id*. at 21.)

An ALJ performs a two-step analysis when evaluating a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, if so, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen*, 80 F.3d at 1281. This is the most demanding standard in Social Security cases. *Id*. at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Here, the ALJ provided a specific, clear and convincing reason for rejecting Plaintiff's testimony. The ALJ found that Plaintiff responded well to conservative treatment. (R. at 24.) An ALJ may properly rely on a claimant's documented improvement and pursuit of only conservative treatment as a basis for rejecting the claimant's symptom testimony. *Tommasetti*, 533 F.3d at 1039-40. Here, Plaintiff does not acknowledge (much less specifically challenge) this component of the ALJ's analysis. As discussed in Part III.C above, this alone precludes the Court from reversing. *Lewis,* 236 F.3d at 517 n.13; *Warre,* 439 F.3d at 1007; *Bergfeld,* 361 F. Supp. 2d at 1110.

Even if the issue weren't forfeited, substantial evidence supports the ALJ's finding that Plaintiff improved with conservative treatment. The ALJ cited several medical records showing Plaintiff responded well to trigger point injections and medication. (R. at 24, 373, 376, 384, 393, 402, 410, 701, 710, 877.) Although alternative views of this evidence are plausible, the ALJ's interpretation is a rational one and is therefore entitled to deference. *Thomas*, 278 F.3d at 954. Further, even if the ALJ articulated his reasoning with suboptimal clarity, the Court can reasonably discern the ALJ's analysis and the supporting evidence and finds that the ALJ's reasoning was sufficient and adequately supported by the record. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (reiterating that ALJs may explain their decisions with unideal clarity so long as their reasoning is reasonably discernible).

Accordingly, the Court rejects Plaintiff's argument that the ALJ applied an incorrect standard when, and failed to provide any reasons for, rejecting her testimony. Even if the ALJ's other reasons for rejecting her testimony were deficient, they were at most harmless error because the ALJ provided an independent, legally sufficient reason—improvement with conservative treatment. *Stout*, 454 F.3d at 1055.

Nor did the ALJ err by failing to include an elevated-legs restriction in the RFC. Although Plaintiff claimed she must elevate her legs throughout the day, it was the ALJ's duty to determine whether that claim is supported by the evidence. And ALJs must include only those limitations in a claimant's RFC that are supported by substantial evidence.

*Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). Because the ALJ properly discounted Plaintiff's allegations based on specific, clear and convincing reasons supported by substantial evidence, he did not err by failing to incorporate, into the RFC calculation, Plaintiff's claim that she must elevate her legs throughout the day.

### E. The ALJ did not err in finding that Plaintiff can perform her past work as a Benefits Clerk II

Plaintiff argues the ALJ erred by finding that her past relevant work corresponds with the Benefits Clerk II position identified by the previous ALJ. (Pl. Br. at 23.) Plaintiff further argues the ALJ erred by failing to call a vocational expert to testify regarding the demands of her past work. (*Id.*)

The Court rejects these arguments because, under *Chavez*, the ALJ was entitled to adopt the previous ALJ's finding that Plaintiff's past relevant work corresponded with the position of Benefits Clerk II. (R. at 57–58.) *Chavez* provides that even if a claimant rebuts the presumption of continuing nondisability that arises with a previous nondisability determination, certain findings made by the previous ALJ are still entitled to preclusive effect unless new and material evidence implicates them. *Chavez*, 844 F.2d at 694. Previous findings regarding a claimant's work experience should remain undisturbed unless new and material evidence challenges them. *Id*. Here, Plaintiff did not present new and material evidence implicating the previous ALJ's findings regarding her past relevant work. (Def. Br. at 14; R. at 57.) In her reply, Plaintiff does not respond to the Commissioner's arguments on this point.

**IT IS THEREFORE ORDERED** affirming the decision of the Administrative Law Judge (R. at 17–26) as upheld by the Appeals Council (R. at 1–3).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 6th day of May, 2021.

Dominic W. Lanza
United States District Judge